Good morning, your honors. May it please the court, my name is Scott Caron, counsel for the County of Los Angeles and Los Angeles Sheriff's Department, the defendants and appellants in this case. Unless the court has any questions about the facts or the issues on this appeal, I'd like to start by addressing the two cases that the court asked counsel to discuss in its order last Thursday. I'd like to just clarify one factual issue. In going over the record again, I found that the employees are all employees of the city, is that correct? Not of the Sheriff's Department. No, well, there are two different public entities involved in this case. The City of Long Beach, the plaintiff was arrested by the City of Long Beach, then was brought to court, then was transferred to the custody of the Los Angeles County Sheriff's Department. So with respect to plaintiff's claims against the Sheriff's Department, it's Sheriff's Department personnel. What the plaintiff is claiming is that he got to the jail and when he got to the jail on the remanding order, he complained to Sheriff's Department personnel and they didn't do anything. Instead, they chose to follow the court's order. The question, counsel, is the individuals sued were city employees vis-a-vis Sheriff's employees, is that correct? I apologize for the misunderstanding, that is correct. Thank you, that was a question. I'd like to start by discussing the Robinson case, which is the Ninth Circuit case that this Court asked us to address. The first issue with respect to the Robinson case that I'd like to point out is that the immunities at issue in the Robinson case are materially different from the immunities that we've raised in this case. In Robinson, on the federal claims, obviously there was qualified immunity here. We don't have any federal claims. On the state law issues, the immunity that was raised in the Robinson case was the immunity of Government Code Section 820.2. It's not clear from the opinion in Robinson, but in the briefs on the Robinson case, it's very clear that 820.2, which is discretionary immunity, was the immunity that was raised. So we're dealing with different immunities altogether. I read Robinson as stating that the district court erred in granting immunity on the state law claims because the district court assumed that because there was immunity for the individuals on qualified immunity on the federal claims, that there was automatically immunity on the state law claims. That's how I read Robinson, and I don't think that that's really an issue that's present here because we never asserted any immunities on the federal claims, or at least no immunities were granted on the federal claims. With respect to the language in Robinson that states that there's no immunity under 820.4 for false imprisonment, I want to be clear about this. This is not a case that involves false imprisonment. Under California law, false imprisonment means imprisonment without lawful authority. Here, I don't think there's any question that there was lawful authority for the plaintiff's detention by the sheriff's department. The remanding order issued by the superior court provided lawful authority for the plaintiff's detention. So this is not a question of whether there was lawful authority for the plaintiff's detention by the sheriff's department. This is a question of the duty that the sheriff's department is under to investigate a complaint by an inmate who has been identified as the subject of a warrant by the court, has been ordered into custody by the court, whether or not the sheriff's department has a duty to look behind that court order and investigate whether or not that court order was correctly entered. So that's aside from the issue of false imprisonment, so I don't think that 820.4 plays into this case. With respect to moving on to the Scott case, which is the California Court of Appeal case, two points. First, the Scott case speaks once again to only one immunity that's at issue here. We've raised California Government Code Section 821.6, which is immunity for prosecution of a judicial proceeding. That's the only immunity that was raised in the Scott case that's at issue here, so I'll address the Scott case's discussion of that. The Scott case first states that with Government Code Section 821.6, and it seems to state this generally with respect to all immunities, that the immunity, if you have a statute of immunity, the act, the predicate act, has to be in step with the action that the immunity speaks to. So in the Scott case, the court held that there was no prosecution of a judicial proceeding because the grovelment of the action was the social worker's failure to take steps to make sure that these minors, these foster children, were being cared for. In this case, and the cases that we've cited in our briefs, I think are very clear that the sheriff's department plays an integral role in the prosecution of a judicial proceeding. I mean, you have the procedure is you have a prosecutor and you have a defense attorney, and they make their arguments to a neutral party, the judge. And the judge makes a decision, and then the sheriff's department does whatever it's supposed to do based on that decision. So to that extent, the sheriff's department does play an integral role in the judicial process. And the cases that we've cited are very clear that, well, they're very clear that strict adherence to court orders is necessary to the integrity of the judicial process. The case of Patterson v. Von Riesen, the Eighth Circuit case that we cited, that's very clear on that point. Also, Hernandez v. Sheehan is very clear on that point. One other issue with respect to the Scott case is that the Scott case discusses this balancing, this sort of balancing test that you have to do when it comes to immunities, that the public good that comes out of the, that arises from the immunity has to outweigh any harm that may result from the application of the immunity. And I think in this case, for the same reasons, that that balancing weighs in favor of the sheriff's department. You can imagine that there are thousands of inmates right now in the county jail who are, who are there on remanding orders who, if there was some rule that said that all you have to do is make a complaint to the sheriff's department saying, the judge made a mistake when he identified me as the subject of the warrant. The judge made a mistake when he made that probable cause determination. I want you to look into this. We would have all kinds of complaints and all kinds of lawsuits arising from multiple complaints. So that's my take on the Scott case. If I may, Your Honor, reserve the balance of my three minutes for rebuttal. Sure. Thank you. Good morning, Your Honor. Donald Cook for plaintiffs. There's no jurisdiction for this appeal. It's just the county appealing the state court's denial of the county's motion on the state law false imprisonment claim. There's no jurisdictions. There are no individuals appealing. The claim turning to the merits. The statement is made that the judge identified my client, Jerome Leslie Clements, as Jane Clements. That the judge made a probable cause determination. It's not the way it works. The judges expect the jailer to bring them the right body. What happened is, whether it's Long Beach officials or county officials is not entirely clear, but one or the other brought to the court paperwork saying, we have James Clements in custody on the warrant. And the court says, the court is told we'll need a supplemental report. And the court says, bring him back in three weeks. James Clements. All they had to do, this isn't a record. I don't expect you to read it from here. But this is the abstract of the warrant. It's got James Clements. It's got his birth date. And it's got the fingerprint proxy, the CII numbers, right here for James Clements. And his L.A. name number for James Clements. Fingerprint proxies. Unique to every individual. And then, here's the arrest report identifying my client, Jerome Leslie Clements. The birth date doesn't match. Of course, the name doesn't match. And most of all, the fingerprint proxy, CII number, L.A. name number, don't match. Different people. No one cares. No one cares because apparently it's the belief of Long Beach, L.A. County, that if an officer in the field makes a tentative identification as this black man with the last name of Clements as being the black man with the last name of Clements on the warrant, the abstract is being one and the same, who are we to say name? And this claim that it's all the court's fault, that they can assume that the court-made identification is refuted by California law going back more than 100 years. You've got the Miller v. Fano decision. The basic rule every law enforcement officer operates under is, sure, you have to enforce court orders or what appear to be valid court orders. But you know when you're arresting someone, you've got to exercise reasonable care. Get the right person on the piece of paper. Under their argument, if they're delivered to their jail a 5'1 black female and the warrant describes a 6'5 Caucasian male, they're under no obligation to double-check that. I don't believe they're talking about the warrant, counsel. Well, sure. I'm sorry. I interrupted. Sure. If you reach a warrant, and you put it out in the field, and some officer picks some guy up on the warrant, you better have some good reason for picking up that person. That's easy. They're not talking about that warrant, if I understand it correctly. They're talking about an order from the Superior Court after the case was brought back, which says to the sheriff, not a general warrant, hold this guy for 22 days and bring him back to me. Correct? Isn't that the order they're talking about? Incorrect. Is that the order they're talking about? That's how they describe it, yes, but that is not the terms of the order. The order states James Clements. I understand. It also had a number, and that number referred to this individual. It was my client's booking number. Yes. Right? That's the booking number assigned when he's put into the jail system to identify him as distinguished from every other individual in the jail at that time. Yes, and the court said, hold this individual. Now, whether he was actually present in court or not, we're not sure. We have to assume he wasn't for these purposes, right? But supposedly he had an attorney there representing him, true? The public defender made an appearance on his behalf, Mr. Montgomery. California law, though, doesn't say that the jailer is off the hook if he can point to a court order. California law, and I'm referring to the Sullivan decision as well as to the Miller v. Fano, when a jailer knows or should have known that the imprisonment is wrongful, his duty is to take steps to release that person. I think the cases you cited deal with picking somebody up on the street. Sullivan was somebody already in sheriff's custody, being held pursuant to a remand order from the superior court. And he was held past his time that he served on a sentence. Yes. The court order didn't say to hold him past his time, did it? Actually, the court order said to continue to hold him until further order of the court. Correct. This was on the felony charge. The sheriff's department did not receive any further order from the court on the felony charge. And that may have been a mistake by the court clerk, but that's what happened according to the sheriff. And the Supreme Court, California Supreme Court, held sheriff's department is liable if he knew or should have known. So I would submit that the fact that a superior court in obvious reliance upon the police to bring in the right body says on the assumption that the person the sheriff's department has in custody or the jailer is the right body, when they say bring him back in three weeks and the jailer knows or should know we don't have the right body, then they're liable. Now, the hypothetical I gave you about the black female and the Caucasian male would apply equally here. If you look at the record, if you look at the two or three lines of court proceedings, the court would have no more reason to dispute or to question the identity of the arrestee as being the person described in the warrant than in this case. Because, again, obviously courts rely on the police in the first instance to at least bring before them the right person. And courts are expecting the police to exercise some degree of care to make sure that they have the right person on whatever order that the court had issued seeking that person's arrest. Are you arguing that the shaders should be forced to investigate every case of mistaken identity? No. What are the limits here? The jailers should read their paperwork. Cheryl Massey, she was the designated agent for the county that I deposed in this case. Her testimony is in the record. I showed her these very documents in the deposition. She says, wrong person. What's the sheriff's department's obligation to do at that point? She says to release him as well as to notify the court that we've got the wrong person. So that's all that's being asked for here is that the sheriff's department read their paperwork. All they had to do was read these documents, go back to the court, and say, Judge, you know, we really think this person we have in custody identified as Jerome Leslie Clemens is not the James Clemens on the warrant because the fingerprints don't match. That's all they had to do. Reading the paper takes a few seconds. Going back to court, well, you know, it's going to take a little bit more than a few seconds, but it's not going to take 22 days. That's all they had to do, read their paperwork. It's not a question even in responding to a complaint. Jailers have an obligation, I would submit, irrespective of any complaint by a prisoner, that when they get paperwork and a body that goes with the paperwork, to at least look at the paperwork and see that it matches with the body. That's it. They didn't do this here. That's why under California law they're liable for false imprisonment. And to try and blame the court when they know quite well because of their role working within the criminal justice system that the courts are not in the business of conducting identification processes. When there's a doubt of identification, what do they do? They immediately turn to the police and say, like, what did your record show? What are the fingerprints? That sort of thing. So none of the immunity they cite, they rely on, apply, because always in the first instance it's expected that the jailer, whether you call in the arresting officer or the guy running the county jail, has to exercise some reasonable care in making sure that the body they have matches up with the paperwork. And the body they had here didn't match the warrant, and therefore they're liable under California law. Thank you. Unless there are further questions, I would submit. Thank you. Just a few brief points in response, Your Honors. First of all, Cardi v. Castillo does provide jurisdiction for this case. Cardi v. Castillo holds that denial of absolute immunity, including specifically quasi-judicial immunity, is immediately appealable, and that's what this Court has already held upon the denial of our petition for writ of mandate. I need to be clear about this as well. The remanding order that committed the plaintiff to the Sheriff's Department's custody did identify the plaintiff as the subject of the warrant. The judge did identify the plaintiff as the subject of the warrant. Obviously, if the plaintiff had not been identified, he wouldn't have been committed into custody. And the remanding order provides further evidence of this. The remanding order specifically identifies the plaintiff as James Clements. But did the judge have all that paperwork in front of him? Presumably, the judge had the paperwork that was brought by the City of Long Beach. That would be the warrant and, I guess, the live scan. All of that information would have been before the Court as well. Just like it would have been presented to the Sheriff's Department as well, but the Sheriff's Department also had not only the live scan results, not only the warrant abstract, also had the paperwork that the Sheriff's Department had included a remanding order identifying the plaintiff as the subject of the warrant. Now, the plaintiff says that he didn't receive... You're saying all that, these two documents that we saw here, they were blown up? You're saying those papers were in front of the judge at the time? We don't know. We don't have the evidence. We can reasonably assume, though, that that information was before the judge. Even if it wasn't, we have information that there was a hearing at which the plaintiff was represented by counsel. There is a dispute as to whether or not the plaintiff was actually present in court. And we can look back with 20-20 hindsight and say, well, the issue of his identity wasn't raised before the court, and that seems unfair. But from the perspective of the Sheriff's Department, the Sheriff's Department just gets... The Sheriff's Department gets the warrant abstract that identifies James Clemens, gets the plaintiff, who says, I'm not James Clemens, I'm Jerome Clemens, and in the middle of it all, they have a court order that specifically identifies the plaintiff by his booking number as James Clemens. So the Sheriff's Department, under all of the authorities that we've cited, particularly Lopez v. City of Oxnard, which applies California Code of Civil Procedures, Section 262.1, to a mistaken identity case. There is no exception under California law to mistaken identity cases. The Sheriff's Department was perfectly reasonable... So how did the wrong booking number get on their form? I believe the correct booking number was on the... The booking number on the remanding order was the plaintiff's booking number. When the plaintiff was booked by the City of Long Beach, a county-generated booking number appeared, and he was assigned that booking number. And that was the only booking number that he had. And his booking number that appeared on Long Beach's paperwork also appeared on the remanding order. And that was what we were getting at in our papers, where we talked about how the Sheriff's Department identifies individuals, identifies detainees by their booking numbers and not by their names, because obviously a lot of arrestees use aliases. And I see that my time has expired, so unless the Court has any further questions, I'll submit. All right. Thank you. Thank you. The matter is submitted, and the Court will recess until 9 o'clock tomorrow morning.
judges: Pregerson, Nelson, Fernandez